# EXHIBIT B

December 11, 2008

Daniel J. Zych
Hartford Life Insurance Company
7 Waterside Crossing, 2nd Floor
Windsor, CT 06095

RE:   **Claimant:**   **Frank Albergio**
      **SS#:**        **REDACTED**

## MEDICAL RECORD REVIEW OF FRANK ALBERIGO

**DOB:** REDACTED

**INTRODUCTION:** I have been asked to review the medical records of Frank Alberigo, who is a 61-year-old male, whose last date of work is 5/30/06 and disability/loss date is 5/31/06. Diagnosis and description as listed on the referral form is as follows: Coronary artery disease, aortic valve disorder, thoracic aneurysm, recurrent thoracic aortic aneurysm, fatigue, shortness of breath, status post cardiac surgery 1993, side effects of medications, osteoarthritis of hands, hips, shoulders, feet, and knees. Restricted range of motion of cervical and lumbar spine, spondylotic disease of spine, polymyalgia rheumatica, status post aortic valve replacement and aortic aneurysm repair, polymyalgia of shoulders and legs.

The specific question to be addressed as listed on the referral form is:
"Enclosed, please find the medical information for Mr. Alberigo. Please provide his restrictions and limitations, if any, from 8/29/08 forward.

In addition, contact with two attending physicians, as listed on the referral form, is requested."

This is a medical review file. I have reviewed all submitted records. I have not personally examined the claimant. My medical opinions are independent of any claims decisions or the referring agency.

**MEDICAL RECORD REVIEW:** Authorization to Obtain and Release Information signed by Frank Alberigo on 3/21/8 was reviewed. Authorization to Disclose Health Information signed by Frank Alberigo on 3/28/08 was reviewed.

A letter dated 9/11/08 from Dr. David Goddard, M.D., FACP, FACR addressed To Whom It May Concern was reviewed. He noted that Mr. Alberigo was under his care. He had polymyalgia rheumatica that was said to be moderately active and severe polyarticular osteoarthritis affecting the hands, shoulders, hips, and knees. He noted that he cannot bend, stoop, or carry any objects heavier than five pounds. He also was noted to have severe heart disease. Per Dr. Goddard, he is medically totally disabled and unable to undertake any work.

A form completed by Dr. Howard Kloth [Cardiologist] on 6/2/06 and also completed by the claimant's employer on 6/29/06 was reviewed. Dr. Kloth noted symptoms of dyspnea on exertion. Objective findings include aneurysmal dilatation of the ascending aorta.

Attending Physician's Statement of Disability signed by Dr. Howard Kloth on 7/12/06 notes a primary diagnosis of thoracic aneurysm, aorta. Secondary diagnosis is aortic valve disorder, status post aortic valve replacement with aortic graft in 1993, aneurysmal dilatation of ascending aorta and severe left ventricular dysfunction. In terms of impairment, he stated "no heavy lifting, no strenuous activity." He indicated that he had essentially good functioning in all areas, occupationally and socially effective.

Attending Physician's Statement of Continued Disability signed by Dr. Howard Kloth on 12/15/06 notes primary diagnosis status post aortic valve replacement, aortic graft in 1993, with secondary diagnosis of recurrent thoracic aortic aneurysm. He again noted, "No heavy lifting, no strenuous activity." He indicated that he was not able to return to work.

ALBERIGO 000168

Attending Physician's Statement of Disability signed by Dr. Howard Kloth on 7/24/06 notes similar primary and secondary diagnosis as above. In this form, he indicated no impairment of standing, walking, sitting, reaching/working overhead, driving and keyboard use/repetitive hand motion and no vision impairment. He did note "no strenuous" with regard to pushing and pulling as well as "no heavy" with regard to lifting and carrying. He again indicated essentially good functioning in all areas, occasionally and socially effective.

Activities of Daily Living Questionnaire signed by Mr. Alberigo on 4/13/07 notes no limitation in his abilities with regard to continence, dressing, bathing, eating, or transferring to and from bed, chair, as well as mobility. With regard to what he felt are his most significant physical limitations, he noted that he was getting out of breath while walking and that he had to rest for three to four minutes and then continue walking. He was employed from 11/10/97-5/31/06 as a New Accounts Clerk. Hobby was indicated as reading. He did not think that he could return to work or seek rehabilitation to some other kind of work and stated "not advisable by doctor."

Attending Physician's Statement of Functionality signed by Dr. Howard Kloth on 4/12/07 states, "No change in physical assessment." "No heavy lifting."

A letter to Dr. Howard Kloth from Donna Santeler dated 3/7/08 was reviewed. In response to statements in the letter, Dr. Kloth indicated that Mr. Alberigo had applied and he had been granted permanent New York state disability. He has had no change in his status since forms were last filled out. He has had no changes in his medications. He indicated that he thought Mr. Alberigo was currently capable of performing full-time sedentary work.

Physical Capacities Evaluation Form signed by Dr. Howard Kloth on 8/8/08 indicates ability to lift up to 20 pounds occasionally, drive, balance frequently, never climb, or crawl. Occasional ability for stooping, kneeling, crouching, reaching above shoulder, at waist/desk level, and below waist level. Occasional ability for handling, frequent ability for fingering and feeling.

ALBERIGO 000169

Records from Dr. David Goddard, M.D., FACP, FACR, ranging from 12/13/07-6/26/08 are now summarized. On 12/13/07, Mr. Alberigo presented with chief complaints of progressive pain and limitation of motion for three months. This started in the left shoulder then affected both groin. He reported difficulties with ambulation and bilateral shoulder abduction. On review of systems, he was noted to have no shortness of breath or chest pain. On examination, his pulse was noted to be irregular. He had bilateral shoulder impingement, osteoarthritis of four joints of the hands, and restricted range of motion of the cervical and lumbar spine. He was also noted to have restricted internal and external rotation of both hips and osteoarthritis involving both knees and the small joints of the feet. Impression on that visit was polymyalgia rheumatica (PMR). He was started on prednisone 5 mg three times a day. By 12/18/07, his pain was said to be about 95% better with prednisone. Examination was the same except for improvement in movement of the hips. Prednisone was continued with plan to undergo physical therapy as well. On 1/18/08, he was said to be now asymptomatic, apart from abduction of the left shoulder consistent with impingement syndrome. Examination was stable. Recommendation was to taper prednisone to 12.5 mg daily. On 2/18/08, "His PMR is quiet." He was noted to have a left frozen shoulder. He had benefited from physical therapy. By 3/18/08, PMR was said to be quiet. His left frozen shoulder was improving with mobilizing exercises. Prednisone was tapered to 10 mg daily.

On 4/15/08, PMR was said to be quiet. His left frozen shoulder was said to be almost totally resolved. On examination, he had 10% reduction in range of motion of the left shoulder. On that visit, prednisone was tapered to 7.5 mg daily for two weeks, and then subsequently 5 mg daily. On 5/15/08, PMR was again said to be quiet. Left frozen shoulder was noted to have resolved. Prednisone was decreased to 4 mg daily. On 6/26/08, PMR was again quiet. Prednisone was tapered by 1 mg decrements every two weeks with follow-up appointment planned for eight weeks.

A record of Operation Summary dated 2/5/93 was included in Dr. Goddard's records. Postop diagnosis was aortic valve replacement [Saint Jude disc prosthesis], excision ascending aorta, and insertion of Dacron graft.

Lab results from Dr. David Goddard were also included for review. On 11/20/07, hemoglobin and hematocrit were low at 12.6 and 37.1 respectively. Subsequent hematocrit and hemoglobin levels were in normal range. Erythrocyte sedimentation rate was high at 28 mm/hr. C-reactive protein was also elevated at 4.8 mg/dl. By 1/14/08, ESR was in normal range at 4.0 and C-reactive protein was normal at 0.6 mg/dl. Last set of lab results were from 3/3/08. Hematocrit and hemoglobin were normal at 40.9 and 14.0. He had serum protein electrophoresis performed, which was said to be essentially normal.

On 5/25/06, Mr. Alberigo had a CT coronary angiogram and CT chest performed. Left ventricular ejection fraction was 38%. He had mild-moderate coronary artery disease involving the left anterior descending and mild coronary artery disease of the left circumflex and right coronary artery.

On 5/31/06, he was seen in consultation by Dr. Aubrey Galloway [Cardiothoracic Surgery] for consultation at New York University School of Medicine. Operation for aortic root replacement was recommended due to a greater than 6 cm aortic root dilatation.

**ATTEMPTS TO REACH ATTENDING PHYSICIAN:** I called Dr. Kloth's office on 12/8/08 at about 9:22 a.m. I left a message with the operator. I was able to reach Dr. Kloth on my second attempt on 12/9/08. Dr. Kloth stated that he was with a patient at the time. I asked if he would like me to call back at a more convenient time. He opted to discuss the case. In our conversation, Dr. Kloth made the following points. He stated that Mr. Alberigo certainly could sit at a desk. He stated that he was not bedridden. He is ambulatory. Dr. Kloth stated that he did not know if his previous job involved sitting at a desk or not. He also stated that he had undergone an extensive cardiac surgery in the past. He stated that the problem is that he went back to work after undergoing that surgery and he probably should have been permanently disabled at that time. He notes that when Mr. Alberigo was faced again with the decision of undergoing another major heart surgery, he decided that he would rather pursue a less active lifestyle rather than take the risk. He sought permanent disability and he has received this from the state. Dr. Kloth stated that he probably should not have gone back to work after his initial cardiac surgery, as this raises the

question as to why he cannot work at this time. He notes that he has severe left ventricular dysfunction with ejection fraction ranging in the 20-25% range on echocardiograms done in his office. Dr. Kloth stressed again that he did receive permanent disability from the state. He had clarified initially during our conversation, if I was calling on behalf of Mr. Alberigo's state insurer or private insurer. I informed Dr. Kloth that I was performing an independent review of his case, as requested by his private insurer.

I noted that I had reviewed forms signed by Dr. Kloth in the past in which he indicated that Mr. Alberigo was able to perform sedentary-type work. I again reviewed the fact that sedentary work entails sitting for about six hours out of an eight-hour work day and requirement for brief periods of standing and walking on an occasional basis. Dr. Kloth agreed that he was capable of this level of work as he had previously stated.

I have so far been unable to reach Dr. David Goddard. I called his office on 12/8/08 at approximately 10:09 a.m. I discussed with "Cheron" and left a message. I called again on 12/9/08 at about 9:10 a.m. I discussed with "Stephanie." I was informed that Dr. Goddard was seeing patients. I left a message again with my contact information. I called on 12/10/08 morning and reached Stephanie who stated that Dr. Goddard was not in the office on that day and that messages were typically forwarded to the office manager and subsequently to Dr. Goddard. On 12/11/08 at 11:20 a.m., I received a call from "Julie" Dr. Goddard's office manager. She informed me that a signed release from Mr. Alberigo was required after which Dr. Goddard would speak with me.

**DIAGNOSIS AND DISCUSSION:** Review of the information provided shows that Mr. Frank Alberigo is a 61-year-old male with multiple medical diagnoses including polymyalgia rheumatica diagnosed in December of 2007, severe polyarticular osteoarthritis involving the hands, shoulders, hips, and knees as well as small joints of the feet, history of dyspnea on exertion, ascending aortic aneurysm, severe left ventricular dysfunction, status post aortic valve replacement with aortic graft in 1993, recurrent thoracic aorta aneurysm, history of congestive heart failure and heart murmur.

Specific question to be addressed as listed on the referral form is:
"Enclosed please find the medical information for Mr. Alberigo. Please provide his restrictions and limitations, if any, from 8/29/08 forward."

Most recent records are from Dr. David Goddard in June of 2008 [office notes], a letter from Dr. David Goddard dated 9/11/08, and Physical Capacities Evaluation Form signed by Dr. Howard Kloth on 8/8/08.

The records show that Mr. Alberigo suffered from progressive pain and limitation of motion for about three months prior to December of 2007. He was diagnosed with polymyalgia rheumatica at his visit with Dr. Goddard on 12/13/07. He was started subsequently on prednisone. ESR and C-reactive protein were elevated initially, both indicating the presence of inflammatory disease. One week after initiation of prednisone, Mr. Alberigo was noted to have about 95% improvement in his pain. He was noted to have a left frozen shoulder for which he underwent physical therapy. By 5/15/08, left frozen shoulder was said to have resolved. He continued to do well and polymyalgia rheumatica was said to be quiet since 2/18/08. On his visit on 1/18/08, he was said to be "now asymptomatic." ESR and C-reactive protein levels returned to normal range soon after initiation of prednisone. It appears, as stated in the records, that Mr. Alberigo had a dramatic improvement of his pain from polymyalgia rheumatica with initiation of prednisone. His prednisone dose was steadily decreased and as of 5/15/08, he was on 4 mg daily and by 6/26/08, the plan was to decrease prednisone dose by 1 mg decrements every two weeks.

The information included in Dr. David Goddard's letter dated 9/11/08 addressed To Whom It May Concern, as detailed above, does not match the information available in the records. He stated in this letter that Mr. Alberigo had polymyalgia rheumatica that was moderately active. Per most recent record from 6/26/08, polymyalgia rheumatica was said to be quiet. He also noted that he did not have ability to bend, lift, stoop, or carry any object heavier than five pounds. There is no evidence in the provided records to suggest such severity of restrictions/limitations of Mr. Alberigo's activities. Based on Mr. Alberigo's rheumatologic diagnoses alone, including polymyalgia rheumatica and osteoarthritis, it is my opinion that he is able to perform work that is

ALBERIGO 000173

at the light level of effort. However, taking into consideration his cardiac diagnoses including thoracic aortic aneurysm [which is recurrent] and left ventricular dysfunction as well as dyspnea on exertion, it is my opinion that from 8/29/08 and forward he is restricted/limited to performing work that is at the sedentary level of effort on a full time basis, as also indicated by Dr. Howard Kloth.

No office notes from Dr. Howard Kloth were provided for review. Mr. Alberigo however had a CT coronary angiogram and CT chest on 5/25/06, which showed significant dilatation of the aortic root. He did see Dr. Galloway on 5/31/06, at which time surgery for aortic root replacement was recommended. In discussing with Dr. Kloth he stated that Mr. Alberigo opted not to take the risk of surgery.

*[signature]*

Nneka Onwubueke, M.D.
Board Certified in Internal Medicine

(Alberigo, F) w

Frank Alberigo - 8



# UNIVERSITY DISABILITY CONSORTIUM
*Physician Specialists for Disability Evaluation and Management*

February 13, 2009

Daniel J. Zych
Hartford Life Insurance Company
7 Waterside Crossing, 2nd Floor
Windsor, CT 06095

**RE:**  **Claimant:**  **Frank Alberigo**
        **SS#:**       **REDACTED**

## ADDENDUM MEDICAL RECORD REPORT

**REQUEST**: We received a 12-11-08 report for the above from Dr. Nneka Onwubueke. We also received a 12-11-08 e-mail stating that treating physician will not speak with him with out a signed authorization specifically naming the reviewer. Below please find the proper authorization. Please have the reviewer attempt to discuss with AP today or tomorrow. Please keep me updated. Thank you.

**REPLY:** I called Dr. David Goddard's office this morning, 2/13/09, at about 9am. I spoke briefly with an office staff after which I did speak to Dr. Goddard (AP).

I introduced my self and asked if he received any documentation about my phone call. He stated that he does not recall receiving any. I told him that it was my impression that he received a signed authorization by the claimant, Mr. Frank Alberigo. AP stated that even if he did, he will absolutely not discuss the case on the telephone stating that he is not allowed to by HIPAA. I asked if he will discuss the case if he had a signed authorization with my name specifically written on it. He stated that he would not since he would not be able to verify my identity on the phone. He stated that he does not discuss these cases on the phone. He will provide written documentation if requested stating that his office will make appropriate charges. I thanked him. The case was therefore not discussed.

Nneka Onwubueke, M.D.
Board Certified in Internal Medicine

(Alberigo, Fadd) w

ADMINISTRATIVE OFFICES • 173 Lincoln Street • Newton Highlands, Massachusetts 02461-1501 • Tel 617.527.1855 • Fax 617.527.2570 • e-Mail UDC@UDC1.com

ALBERIGO 000145